## Cleveland, C., C. & St. L. Ry. Co. v. W. S. Mitchell.

1. LEASES—*Assignable at Law.*—Under Section 15, Chapter 80, R. S., all leases are assignable by any instrument showing an intention to dispose of them, so as to give the assignee a right to sue upon them in his own name.

2. SAME—*When an Approved Assignment Becomes a New Lease.*— Two railroad companies, being desirous of securing a hotel at the intersection of their roads, leased a portion of the station grounds to G., for a term of years, on which G. agreed to erect and conduct a hotel, and not to underlet without the written consent of the companies. The said companies agreed to stop their trains for meals at the hotel when the time of passing was suitable. The premises passed through several hands, by proper assignments of the lease, to which the consent of the companies was given, until one M. became possessed of them, and continued to conduct the hotel, but the appellant company ceased to stop its trains for

meals and M. brought suit for a breach of the lease in this regard which resulted in a recovery. *Held,* that although the agreement to stop the trains might have remained personal to the first lessee, by the assignment and consent thereto by the company, it became in effect a new lease for the unexpired portion of the term and the recovery was sustained.

3. EVIDENCE—*Of Collateral Matters—Presumptions.*—In a suit for damages resulting from the breach of a covenant in a lease by a railroad company, to stop trains for meals at a hotel, at the intersection of another road, it is error to permit witnesses to testify as to the number of persons stopping for dinner on one road and to draw a presumption from the fact that a certain number of persons traveling on the other road would also stop for meals at the same place.

Assumpsit.—Breach of contract. Appeal from the Circuit Court of Saline County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Heard in this court at the August term, 1897. Reversed and remanded. Opinion filed March 1, 1898.

## STATEMENT OF THE CASE.

The Cleveland, Cincinnati, Chicago & St. Louis Railroad and the St. Louis, Alton & Terre Haute Railroad, intersect and cross each other at Parker City in this State; the general course of the former being northeasterly from Cairo, its southern terminus, to Paris in this State, where it connects with its main line from St. Louis to Indianapolis, and the general course of the latter road being southeasterly, from St. Louis, Missouri, its western terminus, to Paducah, Kentucky.

The two roads, being desirous of securing hotel accommodations for the traveling public as well as their employees, at the intersection of the roads, on the 7th day of December, 1889, leased to Alice C. Goe, a portion of their station grounds at Parker City for a term of fifteen years, with the privilege of a renewal at an annual rental of $1 per year, on which she agreed to erect and conduct a hotel for the accommodation of the traveling public and the employees of the railroads as required by them, in a suitable and proper manner during the term of the lease, including facilities for the accommodation of trains with meals, and when so required making the usual reduced rates to the employees of

the companies, and further agreed to pay promptly said rent and to pay all taxes assessed on the improvements made on the land, and not to underlet or transfer said premises without the written consent of the lessors.

The railroad companies on their part agreed as follows : ·

" Said companies severally agree, each for itself, that it will stop such of its passenger trains for meals at said station when the time of passing there is suitable, and such stoppage does not conflict or interfere with connections at other points."    -

By written consent of the lessors, Alice C. Goe assigned her lease to one Daniel Turner, who erected a hotel building on the leased premises, and with like consent it was assigned by Daniel Turner and his assignee until Mrs. M. A. Hobbs became the owner of it with the buildings on the leased land.

Mrs. M. A. Hobbs (her husband joining with her), executed and delivered to appellee an instrument in writing attached to the lease as follows :

STATE OF ILLINOIS, } ss.
Johnson  County.

Know all men by these presents, that we, M. A. Hobbs and B. J. Hobbs, her husband, of Parker City and State of Illinois, have this day sold our entire interest in the hotel known as the Wood Hotel, and situated on a piece of land between the Cleveland, Cincinnati, Chicago & St. Louis Railroad, and the St. Louis, Alton & Terre Haute Railroad, located north of depot at Parker City, to Will S. Mitchell, of Grayville, White county and State of Illinois, for the term of thirty years, as per lease given to Daniel Turner and assigned by Daniel Turner to W. A. Wood and assigned by W. A. Wood to Mrs. M. A. Hobbs, and this to be attached and become a part of said lease, for and in consideration of the sum of seventeen hundred and fifty dollars, all of which is paid down except eleven hundred and fifty dollars, that being the amount of a certain chattel mortgage given to F. M. Westbrook and Anderson Taylor by Mrs. M. A. Hobbs; now it is fully understood and agreed between Mrs. M. A. Hobbs and

Will S. Mitchell that the said Will S. Mitchell is to take the said property and assume the payment of the said chattel mortgage now held by F. M. Westbrook and Anderson Taylor, and the said Will S. Mitchell is to have the house and all other buildings on ground described in the aforesaid lease.

Given under my hand and seal this the 20th day of March, 1894.

M. A. HOBBS. [SEAL.]

B. J. HOBBS. [SEAL.]

The written consent of the St. Louis, Alton & Terre Haute Railroad Company was attached to the instrument, and also the consent of appellant as follows :

" CINCINNATI, OHIO, March 24, 1894.

The consent of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company is hereby given to the assignment of lease of the property and privileges embraced in the attached lease from Mrs. M. A. Hobbs to W. S. Mitchell, of Grayville, Illinois.

THE CLEVELAND, CINCINNATI, CHICAGO &
ST. LOUIS RAILWAY COMPANY,

By GEO. W. KITTRIDGE,

Chief Engineer."

On receipt of the lease appellee took possession of the property and kept and maintained the hotel until the bringing of this suit.

Appellant did not stop any of its passenger trains for meals at Parker City after appellee became the owner of the property, and for an alleged breach of the agreement to do so, this suit was brought by appellee, who recovered a verdict and judgment against appellant for $1,500, from which the railway company has appealed.

C. S. CONGER, attorney for appellant, contended that the clause in the lease was not a covenant that ran with the land.

While, as has been said, there are many covenants which run with the land, binding assigns as well as operating in their favor, there is a distinction between such as bind

assigns without being named and such as require them to be named in order to charge them with their performance. And the distinction seems to be whether the subject-matter of the covenant is *in esse* at the time of the demise or not. If it is, the covenant binds the assignee, whether named or not; if it is not, it does not bind him, unless expressly named therein. Thus if the covenant be to keep houses then on the premises in repair, it runs with the land, and binds the assignee, though not named. But if to build a new house on the demised premises, it will not bind assignees unless named. Washburn on Real Property, Vol. I, 330.

A covenant by a lessor to pay for improvements to be put on premises by a lessee is a personal one, and does not run with the land to bind assignee of reversion. Smith's Landlord and Tenant, 290, 291.

A covenant in a lease which relates to a thing not *in esse*, but to be done upon the land, does not run with the land and bind the assignee, unless he be named in the covenant. Tallman v. Coffin, 4 Comst. (N. Y.) 134; Allen v. Wooley, 1 Blackf. (Ind.) 148; Dolph v. White, 12 N. Y. (2 Kern) 296; Peterson v. Haight, 1 Miles (Pa.), 250.

Counsel also contended that the evidence of the damages was inadmissible.

Greenleaf on Ev., Sec. 52, lays down the general rule as to proof of collateral facts, as follows:

This rule excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute; and the reason is, that such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice, and mislead them; and moreover, the adverse party, having had no notice of such a course of evidence, is not prepared to rebut it. Thus, where the question between landlord and tenant was, whether the rent was payable quarterly, or half yearly, evidence of the mode in which other tenants of the same landlord paid their rent was held inadmissible. And where, in covenant, the issue was whether the defendant, who was a tenant of the plaintiff, had com-

mitted waste, evidence of bad husbandry, not amounting to waste, was rejected.

PARISH & PARISH and CHOISSER, WHITLEY & CHOISSER, attorneys for appellee.

The construction we place upon this lease and its assignments is fully warranted by the well known rules of construction: "In giving a construction to a contract, the question is, what was the bargain, by a fair and reasonable construction of the words and acts of the parties, and not what was the secret intent or understanding of either of them." Nichols v. Mercer, 44 Ill. 250. "The rule universally adopted in the construction of contracts is, that the intent of the parties, at the time the instruments are executed, as collected from the language, shall prevail." Duncan et al. v. Charles, 4 Scam. 561. In Robinson v. Stow, 39 Ill. 568, the court, on page 572, uses this language: "While it is not the province of courts to interpolate new terms into contracts, against the evident intention of the parties, with the view of making such contracts more reasonable, yet, on the other hand, even a strained construction of the language will be adopted for the purpose of preventing obvious injustice." Further, on the same page, the court quotes with approval the language of Lord Hale, now become a maxim: "The judges ought to be curious and subtle to invent reasons and means to make acts effectual according to the just intent of the parties; they will not, therefore, cavil about the propriety of . words when the intent of the parties appears, but will rather apply the words to fulfill the intent than destroy the intent by reason of the insufficiency of the words."

MR. JUSTICE BIGELOW DELIVERED THE OPINION OF THE COURT.

When plaintiff below offered in evidence the lease and assignments thereon and thereto attached, and also the consent of the railroad companies, the defendant objected to it for two reasons: First, because the instrument executed by

Mrs. M. A. Hobbs and husband to appellee was not an assignment of the lease; second, because, in the language of appellant's counsel, "The subject-matter of the covenant between the two railway companies as to stopping trains was not *in esse* at the time of the execution of the lease; it was a covenant to do something in the future, of a personal nature, which the railway companies might be willing to undertake with Mrs. Goe, but not with her assignees. It was not a covenant that ran with the land."

As the first ground of objection does not appear to be seriously insisted upon, it may be disposed of by observing that Section 15 of Chapter 80 of the Revised Statutes of this State, which makes a lease assignable so as to give the assignee a right of action thereon in his own name, unlike the statute governing the assignment of negotiable instruments, does not require the assignment when in writing to be indorsed upon the instrument itself, and hence it may be assigned by any instrument or agreement showing an intention to dispose of it. It is true Mrs. Hobbs and her husband do not use the word "assign" in the instrument executed by them, but they do use the word "sold" which is, as used, equivalent to "assign" as we think, and that is sufficient. As the sale was of the entire hotel property, and the instrument refers to the lease and by its terms was to be attached to and become a part of the lease, and since all of the parties, and particularly appellant itself, understood that the lease was being assigned, we must hold the instrument executed by Mrs. Hobbs and her husband effective for that purpose.

As to the second ground of objection to the introduction of the lease in evidence, it would seem that a complete answer to it is, that although the agreement to stop the trains was and might have remained personal to Mrs. Goe, as far as anything she could do was concerned, yet when she assigned her lease by the consent of the lessors, as to all of the agreements of the lessors to be performed in the future by Mrs. Goe, the assignee of the lease stood in Mrs. Goe's shoes, and had been fully accepted by the lessors in her stead. By the assignment and consent thereto, the lease

became in effect a new lease to appellee for the unexpired portion of the term it had to run, and the benefits of all the agreements and undertakings on the part of appellant yet to be performed, passed to appellee, if not by express contract between the lessors and appellee, then certainly by virtue of section 15 of the landlord and tenant act, above referred to.

The agreement of appellant to stop its passenger trains for meals, was not for a single isolated act or series of acts, to be done for the benefit of Mrs. Goe only, but the acts were to be continuous and ran with the lease for the benefit of whoever should become the legal owner of it.

The court did not err in admitting the lease in evidence.

By a series of questions propounded to some of appellee's witnesses, they were allowed, against the objection of appellant, to testify that the number of passengers passing Parker City on the Cairo Short Line (really the St. Louis, Alton & Terre Haute Railroad), and appellant's road were about the same; that two trains on the Short Line stopped for a time at Parker City for dinner, one at 1:15 and the other at 2:15 P. M., and that the number of passengers from the Short Line thus stopping for dinner would average twelve or fourteen per day. One or more of the witnesses were allowed to testify to substantially the same facts, prior to the time appellee had anything to do with the hotel, and all for the purpose, after proving the average cost of preparing a meal and the price it was sold for, of laying a foundation for the jury to compute the damages appellee was entitled to recover of appellant, for a breach of its covenant in not stopping its trains for breakfast and supper. The two roads cross each other nearly at right angles, and their *termini* are wide apart, and no presumption can be drawn from the fact that a certain number of persons on the average, traveling on the Short Line road, stopped for dinner at Parker City, that any particular number on the average, traveling on appellant's road, would stop for either breakfast, dinner or supper at the same place. Greenleaf on Ev., Sec. 52.

Nearly, if not quite all of the evidence offered by appellee to establish the amount of damages suffered, was of this character, and in overruling appellant's objection to it, the court erred, and it also erred in giving to the jury any of the plaintiff's instructions based on such evidence, and for these errors the judgment of the Circuit Court is reversed and the cause remanded.